**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**

**Case No. 5:03cr1-RH**
**Case No. 5:04cv174-WS/WCS**[1]

**KEITH L. SINGLETON,**

**Defendant.**

**_____________________________/**

**REPORT AND RECOMMENDATION ON AMENDED § 2255 MOTION**

This cause is before the court on Defendant Singleton's amended motion to vacate sentence filed pursuant to 28 U.S.C. § 2255, and supporting memorandum. Docs. 95 and 96. Defendant had been directed to file an amended motion, and advised that "[o]nce § 2255 relief is denied on the merits, the filing of a second or successive motion is severely limited," so he should raise all available claims. Doc. 94, p. 2, *citing* 28 U.S.C. §§ 2244 and 2255. Defendant filed the amended motion now before the court last October. Doc. 95. The court has not served it on the Government or taken

[1] Defendant also references civil case number 4:04cv295-RH/WCS. Doc. 95, 97, 98, 101. That is not a valid case number. The correct number assigned to this § 2255 proceeding is 5:04cv174-RH/WCS

any other action. The file was set aside awaiting a ruling in Booker (discussed ahead), and has been overlooked since that time through no fault of Defendant.

**Procedural History**

Defendant entered a guilty plea on March 14, 2003. Doc. 39 (transcript). The Government submitted a factual basis for Defendant's plea prior to the guilty plea proceeding. Doc. 27. It reflects that Defendant was visited by Sandrea Jackson (his co-defendant in this case) on May 25, 2002, while he was a federal inmate at FCI Marianna. *Id.*, p. 1. Jackson came with her daughter,[2] who watched television in an adjacent room. *Id.* Around 11:31 a.m., Defendant and Jackson began looking around "in a suspicious manner." *Id.* At 11:33, Jackson took her daughter into the bathroom, and they came out of the bathroom at 11:38. *Id.*, p. 2. The officer "noticed that Jackson seemed to be holding her mouth closed tightly," and then she and Defendant "kissed for a prolonged period of time." *Id.* The officer noticed Defendant swallow hard several times during this kiss, and after the kiss both he and Jackson appeared more relaxed. *Id.*

Based on the observations of the officer the visit was ended and Defendant was placed in a cell with no running water or restroom facilities. *Id.* Ultimately, found in his stool were objects later determined to be balloons containing approximately 2.3 grams of marijuana. *Id.* The Government anticipated that inmates Gamble, Graham, and Mitchell would testify that on several occasions Defendant obtained marijuana in the prison through Jackson. *Id.*, p. 3.

---

[2] The statement of facts refers to Jackson's daughter, but she was actually Defendant's daughter. *See* Doc. 59, p. 4 (Defendant's testimony that Jackson would visit him and bring his children, and that his little girl had started calling her "mom").

At his rearraignment, Defendant told the court that he swallowed some balloons; he said he did not really know what was in them, but conceded it was probably a controlled substance. Doc. 39, pp. 11-12. He admitted that he swallowed them believing they contained a controlled substance he would be able to use or sell. *Id.*, p. 14. While the Government asserted that Defendant obtained the drugs from Jackson, the Court noted that it did not matter for purposes of the plea whether he got them from a trash can or from Jackson. *Id.*, p. 12. Defendant said he understood that he faced a maximum term of 5 years imprisonment, consecutive to his current sentence. *Id*., p. 14.

Defendant told the court he had talked to his attorney about the United States Sentencing Guidelines, and said he understood that counsel's estimation of the guidelines as applied in his case might not necessarily be correct based on a number of factors. *Id.*, pp. 14-15. The court accepted the plea, and advised Defendant that a presentence report would be prepared. *Id.*, p. 19. He was advised of the right to have counsel present when he talked to the probation officer. *Id.*, p. 20. He was advised that he should read the PSR "very carefully," and "it's important that you read that report promptly and let Ms. Timothy know of any problems with it." *Id.*, at 20.

The PSR was prepared on April 15, 2003, and revised on May 23, 2003. PSR, p. 1. The Government filed objections on May 14, 2003, asserting that Defendant did not simply possess the marijuana, but distributed it, that he had an organizer or leader role in the offense, and that he should receive an enhancement for obstruction of justice. Doc. 45, pp. 1-2. The Government noted that additional objections concerning obstruction of justice and acceptance of responsibility might be warranted after Defendant testified at Jackson's trial. *Id.*, p. 2. Attached to the objections were

interview transcripts of inmates Albert Warren, Clarence Mitchell, Larry Graham, Erwin Jordan, and Nathan Gambles.

Defendant testified on May 20, 2003, at Defendant Jackson's trial. Doc. 59 (transcript of excerpt from second day of trial). He testified that Jackson was his fiancee, whom he had known since 1997, and they were planning to marry in 2001. *Id.*, p. 3. He said that on May 25, 2002, she came to see him and they argued about how many calls he was allowed to make. *Id.*, pp. 4-5. He admitted he pleaded guilty to having marijuana in the prison, but he claimed that he found it in the garbage in the visiting room, and asserted that Jackson did not bring it to him. *Id.*, p. 6. He pointed out the garbage can on a drawing of the visitation room. *Id.*, pp. 8-9. He said Jackson never passed anything to him by kissing, or gave him anything to swallow. *Id.*, p. 11. Defendant denied telling Nathan Gambles that his girlfriend was bringing marijuana in the prison. *Id.*, pp. 11-12. He denied telling Albert Warren, Larry Graham, or Clarence Mitchell anything about bringing marijuana into the prison. *Id.*, pp. 13-14. He said he asked Albert Warren to send money to Sandrea Jackson because he and Warren were betting on games and Warren owed him money. *Id.*, pp. 15-16. He said he had never talked to Warren after the May 25 incident, but did receive a letter from Warren advising the offense carried only six months. *Id.*, pp. 31-32.

Defendant Singleton's counsel filed a motion to continue sentencing due to developments in the case following Jackson's trial. Doc. 62. Counsel asserted that numerous revisions had been made to the PSR, notably two two-level enhancements, for being a leader or organizer and for distribution as opposed to mere possession. *Id.* The motion to continue was granted. Doc. 63.

The evidence against Jackson, which included evidence showing that she was supplying Defendant with marijuana and that Singleton was distributing marijuana in the prison, is summarized in the order denying Jackson's motion for new trial. Doc. 73. The court found that Singleton's testimony was not credible, and the evidence of Jackson's guilt was overwhelming. *Id.*, p. 3.

Both defendants were sentenced on August 14, 2003. Doc. 86 (transcript). Defendant's counsel objected to the sentencing under the U.S.S.G. § 2D1.1 for distribution, rather than the § 2P1.2 for possession. *Id.*, p. 7. Counsel argued that Defendant's position was that the cooperating witnesses testified falsely because motivated by their desire to obtain sentence reductions. *Id.*, pp. 7-8. Counsel argued that Defendant did not need the money, the marijuana was only for personal use, and pointed out some discrepancies in the testimony of other inmates. *Id.*, pp. 8-10. It was clarified that this was a factual question rather than a legal question. *Id.*, p. 11.

The court found that Defendant was involved in distributing, not just possessing, marijuana in the institution. *Id.*, p. 15. Taking into consideration that other inmates might lie or exaggerate in hopes of a Rule 35 motion, the court credited their testimony based on all the circumstances and evidence. *Id.*

Regarding role in offense, the Government had objected and the two level increase under § 3B1.1(c) was accepted in the addendum to the PSR. *Id.*, pp. 15-16. Defense counsel objected that this was not supported by the evidence at Jackson's trial. *Id.*, pp. 16-17, 18-19. The court found that Defendant was a leader, organizer or manager of this operation. *Id.*, pp. 19-20.

The court then brought up whether Defendant was entitled to credit for acceptance of responsibility in light of obstruction of justice, noting that "it jumps off the page to me" where someone gives "flat false testimony, that is not consistent with acceptance of responsibility." *Id.*, pp. 23-27. Counsel expressed Defendant's position that he testified truthfully, and argued that some circuits had held that conduct causing a person to lose credit for acceptance of responsibility must be related or similar to the offense of conviction. *Id.*, pp. 27-28. The court rejected the argument, also noting that Defendant's false testimony was related to this case and inconsistent with acceptance of responsibility. *Id.*, pp. 28-29. Counsel expressed Defendant's frustration that it seemed like a simple case, he admitted what he had done, then it "mushroomed" into something different, and different from what counsel had predicted the guidelines sentence would be. *Id.*, p. 30.

The court assessed the obstruction enhancement against both defendants, finding "that each knowingly and willfully gave false testimony during the trial." *Id.*, p. 31. The court specifically noted "I would reach the same conclusion even if the standard was proof beyond a reasonable doubt." *Id.*, p. 32. Defendant's guidelines range was 30-37 months. *Id.*

Counsel asked the court to consider the low end of the range, and consider submissions to the court (program review sheets and character letters) showing that Defendant had been doing well in prison prior to this incident. *Id.*, p. 33. The court selected a sentence of 36 months, near the high end of the range. *Id.*, pp. 40, 45.[3] The

[3] When given the opportunity to say anything to the court before sentencing, Defendant did not wish to do so. *Id.*, pp. 32-34. When Defendant was asked to stand for formal imposition of sentence, he responded "[i]f I wouldn't, give me 37 months." *Id.*,

term of supervised release was made concurrent with the term in case 1:99cr36-MMP, but the term of imprisonment was consecutive. *Id.*, p. 48. The court noted that a consecutive sentence was required by statute, but the court would require it even if it were discretionary. *Id.*, pp. 48-49.

**Claims and Legal Analysis**

Defendant raises two related grounds in support of his § 2255 motion. Doc. 95, p. 3. He argues ineffective assistance of counsel because it was well settled at the time of his conviction that any fact necessary to increase the sentence must be charged in the indictment and proved beyond a reasonable doubt. *Id.* He asserts as ground two that the trial court exceeded its jurisdiction, and violated his Sixth Amendment right to trial by jury, in sentencing him based on facts never charged in the indictment or admitted by Defendant. *Id.* Specifically, Defendant challenges the enhancements to his sentence based on his role in the conspiracy, obstruction of justice, and distribution. Doc. 95, p. 3; doc. 96, pp. 4-7. Defendant also claims that his imprisonment for this conduct violates the Eighth Amendment. Doc. 96, p. 10.

Defendant's claims are based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny. In Apprendi, the Court "confirm[ed] the opinion that we expressed in [Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum

---

p. 45. When the court announced the term of 36 months, Defendant said "I'd rather take 37." *Id.* It is not apparent (and somewhat puzzling) why Defendant asked for an extra month of imprisonment.

must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63.

Defendant also references Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), decided shortly after Defendant's conviction became final.[4] In Blakely, the Court found that Apprendi applied to a sentence enhanced under the Washington Reform Act, explaining that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." 542 U.S. at __, 124 S.Ct. at 2537. *See also* United States v. Booker, 543 U.S. __, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (decided after Defendant's amended § 2255 motion was filed), applying Blakely to the Federal Sentencing Guidelines.

Defendant is not entitled to relief because Blakely and Booker do not apply retroactively on collateral review. Varela v. United States, 400 F.3d 864, 867 (11th Cir. 2005) (Blakely and Booker do not apply retroactively on collateral review), *citing* McCoy v. United States, 266 F.3d 1245, 1256-58 (11th Cir. 2001), *cert. denied*, 536 U.S. 906 (2002) (Apprendi does not apply retroactively on collateral review), other citations omitted. *See also* Guzman v. United States, 404 F.3d 139, 140 (2d Cir. 2005) (agreeing with the Sixth, Seventh, Tenth, and Eleventh Circuits that Booker is not retroactive) (citing Varela, other citations omitted); Lloyd v. United States, 407 F.3d 608, 615-616 (3d Cir. 2005) (joining the other circuits, collecting cases).

---

[4] Following the filing of an Anders brief, the judgment was affirmed on February 27, 2004, and the mandate issued on March 29, 2004. Doc. 92. The judgment became final on May 27, 2004. Clay v. United States, 537 U.S. 522, 123 S.Ct. 1072, 1075, 155 L.Ed.2d 88 (2003) (if a petition for writ of certiorari is not filed, conviction becomes final when the 90 days for seeking certiorari expires). Blakely was denied on June 24, 2004.

Defendant argues that retroactivity analysis is not relevant here as the right was well established in Apprendi and other cases. Doc. 96, pp. 10-12. "Lest there be any confusion," Defendant explains, he does not explicitly rely on Blakely; rather "the gravamen of Movant's claim is premise[d] on the settled law of the land at the time of his conviction in **Apprendi**." *Id.*, p. 14. Defendant asserts that reasonable counsel would have known that the Blakely case was pending. *Id.*, p. 13.

At the time of Defendant's indictment, as well as his guilty plea and sentencing (*i.e.*, after Apprendi and before Blakely), the Eleventh Circuit had held that "*Apprendi* has *no effect* on cases in which a defendant's actual sentence falls *within the range* prescribed by the statute for the crime of conviction." United States v. Sanchez, 269 F.3d 1250, 1268 (11th Cir. 2001) (en banc) (emphasis in original). The reasoning was that Apprendi did not apply to guidelines determinations, and "does not apply to those findings that merely cause the guideline range to shift within the statutory range." *Id.* at 1262 (footnote omitted). Indeed, prior to Blakely, "only one court had ever applied *Apprendi* to invalidate application of a guidelines scheme." Blakely, 542 U.S. __, n. 1, 124 S.Ct. at 2547, n. 1 (J. O'Connor, dissenting). As the application of the guidelines merely shifted Defendant Singleton's sentence within the five year statutory maximum range, a Blakely type claim made at sentencing would have been unsupported and contrary to circuit precedent.

Defendant's assertion that counsel should have known the Blakely issue was pending is also without basis. There a state court in Washington held that Apprendi did *not* apply to the Washington Sentencing Reform Act, and the Supreme Court did not grant certiorari until October 20, 2003, after Defendant's sentencing (on August 14,

2003). Blakely v. Washington, 540 U.S. 965, 124 S.Ct. 429, 157 L.Ed.2d 309 (2003). Further, even after Blakely was actually decided by the Supreme Court and its application to the federal guidelines was pending a decision in Booker, the Eleventh Circuit held "that district courts should continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue." United States v. Reese, 382 F.3d 1308, 1312 and n. 2 (noting that oral argument was scheduled for October 4, 2004), *cert. granted and judgment vacated*, 125 S.Ct. 1089 (2005) (for further consideration in light of Booker opinion). Counsel did not err in failing to anticipate Blakely.

Finally, Defendant's reference to the Eighth Amendment is unavailing. Proof beyond a reasonable doubt and trial by a jury are not secured by the Eighth Amendment. *Cf*. Jones, 526 U.S. at 243, n. 6, 119 S.Ct. at 1215, n. 6. ("under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."); Ring v. Arizona, 536 U.S. 584, 600, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002) (quoting Jones). *See also* Booker, 125 S.Ct. At 746 ("[t]he question presented in each of these cases is whether an application of the Federal Sentencing Guidelines violated the Sixth Amendment."); Blakely, 124 S.Ct. at 2543-44 (O'Connor, dissenting, finding it "implausible that the Framers would have considered such a result [reached by the Blakely majority] to be required by the Due Process Clause or the Sixth Amendment . . . ."). Defendant has not stated an Eighth

Amendment claim under the Apprendi rationale. An Eighth Amendment claim based on the length of his sentence, if raised, is frivolous.[5]

Defendant cannot demonstrate ineffectiveness of counsel, is not entitled to assert his Blakely / Booker claim retroactively, and has not raised a colorable Eighth Amendment claim.

Accordingly, it is **RECOMMENDED** that amended motion to vacate sentence pursuant to 28 U.S.C. § 2255, doc. 95, be **SUMMARILY DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on August 2, 2005.

**s/ William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

[5] "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (citations omitted). In Ewing, the Court found a "three strikes" sentence of 25 years to life was not unconstitutionally disproportionate to the offense of felony grand theft, which was based on shoplifting three golf clubs. 538 U.S. at 28-31, 123 S.Ct. at 1189-90. *See also* Hutto v. Davis, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (rejecting Eighth Amendment challenge to a total sentence of 40 years imprisonment for possession and distribution of nine ounces of marijuana).